# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEROME M. IRVING, : | |
| Plaintiff, : | |
| : | |
| v. : | CIVIL ACTION |
| : | |
| CHESTER WATER AUTHORITY, : | |
| Defendant. : | NO. 08-5156 |

## MEMORANDUM OPINION

Tucker, J.                                                                                                          June ___, 2010

Presently before the Court are Defendant's Motion for Summary Judgment (Doc.16); Plaintiff's Answer to Defendant's Statement of Material Facts (Doc. 18); and Defendant's Reply to Plaintiff's Response to its Motion for Summary Judgment (Doc. 19). For the reasons set forth below, this Court will grant Defendant's motion.

## BACKGROUND

Plaintiff Jerome M. Irving was an employee hired by Defendant Chester Water Authority ("CWA") in 1994. For approximately ten years, from 1997 through 2007, Plaintiff worked in the position of Repairman Specialist. (Pl.'s Dep. 12:4-13, May 11, 2009, Def.'s Ex. A.) That position involved several duties, including inspecting and maintaining booster stations that control system pressure, and performing water quality testing on a daily basis. (Pl.'s Dep. 12:19-13:13, Def.'s Ex. A.) On June 3, 2005, Plaintiff was attempting to repair a jockey pump that was suspended from a ceiling. (Pl.'s Dep. 15:20-25, Def.'s Ex. A.) The pump, weighing between 100 and 300 pounds, fell from the ceiling and into Plaintiff's arms. (Pl.'s Dep. 15:20-25, 16:20-17:9, Def.'s Ex. A.) At the time of the incident, Plaintiff was working in an underground pit. (Pl.'s Dep.

20:16-24, Def.'s Ex. A.) The pit had a concrete lid weighing 50 to 60 pounds. (Pl.'s Dep. 23:10-23, Def.'s Ex. A.) Although there was a summer intern nearby to assist him, Plaintiff was the only one permitted in the pit pursuant to regulations of the Occupational Safety and Health Administration ("OSHA"). (Pl.'s Dep. 18:10-16, Def.'s Ex. A.)

Plaintiff continued to work for a week after the incident, and then began to develop severe pain in his lower back. (Pl.'s Dep. 33:2-34:4, Def.'s Ex. A.) After reporting the incident to the supervisor of his department, Plaintiff obtained treatment from an Occupational Health physician, in accordance with his supervisor's instructions, and underwent therapy for two to three weeks. (Pl.'s Dep. 35:13-36:22, Def.'s Ex. A.) Plaintiff was placed on light duty for a 60-day period, pursuant to Defendant's policy, which provides a "temporary transitional accommodation" to allow employees to return to work after injury. (Def.'s Ex. B.) The offer of light-duty work is conditioned upon the availability of productive work and a statement from the employee's doctor that there is a reasonable medical likelihood that the employee can return to full duty at the end of the 60-day period. (Def.'s Ex. B.) Defendant extended the 60-day period for Plaintiff. (Pl.'s Dep. 40:23-41:10, Def.'s Ex. A.)

On August 9, 2005, Plaintiff sought treatment from his own physician, Dr. Raymond Wolfe (Pl.'s Dep. 41:15-42:9, Def.'s Ex. A), who diagnosed him with degenerative disc disease with stenosis (Wolfe Dep. 13:23-24, Apr. 25, 2006, Def.'s Ex. K). A medical release form, signed by Dr. Wolfe on November 18, 2005, indicated that Plaintiff "reached maximum medical improvement and has a permanent disability." (Def.'s Ex. C.) In addition, Dr. Wolfe placed permanent restrictions on Plaintiff, including restrictions on lifting, pushing, or pulling greater than 50 pounds; digging with a shovel; and using heavy tools (e.g., jackhammer). (Def.'s Ex. C.)

2

Further, Dr. Wolfe indicated that there are certain activities—bending, crawling, operating heavy equipment (e.g., forklifts and cranes), squatting, and working at heights—that Plaintiff can perform only occasionally. (Def.'s Ex. C.) Plaintiff requested employment at the CWA within Dr. Wolfe's restrictions, but Defendant advised him that it could not accommodate his request because the restrictions would affect his ability to perform the functions of a Repairman Specialist. (Def.'s Exs. F, G, H.) Specifically, Defendant noted that digging with a shovel and using heavy tools are functions of the position; his capacity to operate valves and fire hydrants would be affected by the restrictions on lifting, pushing, or pulling over 50 pounds; and, his ability to perform pump and motor maintenance would be limited by the restrictions on bending, crawling, and squatting. (Def.'s Ex. F.) On August 3, 2006, Defendant notified Plaintiff that his seniority with the CWA was terminated. (Def.'s Ex. I.)

Plaintiff filed a worker's compensation claim on August 9, 2005 and, ultimately, was awarded worker's compensation benefits. (Def.'s Ex. L.) At a hearing on his petition, held May 18, 2006, Plaintiff testified that his position includes changing pumps and valves, as well as opening and closing hydrants. (Worker's Comp. Hr'g Tr. 6:1-4, May 18, 2006, Def.'s Ex. J.) In addition, he testified that he would often change pumps, ranging from six to eight inches in diameter; disconnect the pumps by unbolting them with flanges; move the pumps; and repair and replace the pumps. (Worker's Comp. Hr'g Tr. 6:5-11, Def.'s Ex. J.) He also testified that he had to climb into pits and either take apart and rebuild valves, or remove and replace pumps. (Worker's Comp. Hr'g Tr. 6:12-15, Def.'s Ex. J.) He further explained that the valves can range in weight from 60 to 400 pounds. (Worker's Comp. Hr'g Tr. 6:19-20, Def.'s Ex. J.) He noted that he usually would have assistance from another employee with lifting the heavier pumps and

3

valves. (Worker's Comp. Hr'g Tr. 6:25-7:3, Def.'s Ex. J.) Additionally, he testified that, since the incident, he did not feel physically capable of performing certain pre-injury job duties, such as taking apart a pump, which he described as a "one man job;" crawling in and lifting a hydroconstant; and using a jackhammer to open a pit lid. (Worker's Comp. Hr'g Tr. 21:13-22:19, Def.'s Ex. J.) At the close of the hearing, the judge concluded, *inter alia*, that the testimony of Defendant's representatives supported a finding that a light-duty position was not available to Plaintiff after the 60-day period; Dr. Wolfe's testimony was more credible than the testimony of an independent medical examiner, who concluded that Plaintiff could return to work without restrictions; and Defendant was unable to accommodate the restrictions placed on Plaintiff after the 60-day light-duty program. (Def.'s Ex. L, 4:11-12.)

Plaintiff subsequently filed charges with the Equal Employment Opportunity Commission ("EEOC") and brought the instant Complaint, alleging that Defendant violated his rights under the Americans with Disabilities Act, 42 U.S.C. §§ 12101-12213 ("ADA"), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17 ("Title VII"), when Defendant refused to allow him to continue working at the CWA within his doctor's restrictions and refused to accommodate his disability though light-duty positions were available and other injured employees were accommodated. Defendant contends that Plaintiff's charges should be dismissed with prejudice based on his inability to perform the essential functions of his position and the unavailability of accommodations for his permanent restrictions.

**STANDARD OF REVIEW**

Summary judgment is appropriate where the movant establishes that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.

4

R. Civ. P. 56(c); Levy v. Sterling Holding Co., LLC, 544 F.3d 493, 501 (3d Cir. 2008). A factual dispute between the parties will not defeat a motion for summary judgment unless it is both genuine and material. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Dee v. Borough of Dunmore, 549 F.3d 225, 229 (3d Cir. 2008). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. See Anderson, 477 U.S. at 248; Fakete v. Aetna, Inc., 308 F.3d 335, 337 (3d Cir. 2002). The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the non-moving party to carry its burden of proof. See Celotex v. Catrett, 477 U.S. 317, 327 (1986).

Once the movant has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Scott v. Harris, 550 U.S. 372, 380 (2007) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). Under Rule 56(e), the opponent must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. See Martin v. Godwin, 499 F.3d 290, 295 (3d Cir. 2007). At the summary judgment stage, the court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. See Anderson, 477 U.S. at 249; Jiminez v. All American Rathskeller, Inc., 503 F.3d 247, 253 (3d Cir. 2007). In doing so, the court must construe the facts and inferences in the light most favorable to the non-movant. See Matsushita, 475 U.S. at 587; Horsehead Indus., Inc. v. Paramount Commc'ns, Inc., 258 F.3d 132, 140 (3d Cir. 2001). The court must award summary judgment on all claims unless the non-movant shows through

affidavits or admissible evidence that an issue of material fact remains.  See, e.g., Love v. Rancocas Hosp., 270 F. Supp. 2d 576, 579 (D.N.J. 2003); Koch Materials Co. v. Shore Slurry Seal, Inc., 205 F. Supp. 2d 324, 330 (D.N.J. 2002).

## DISCUSSION

Defendant asserts the following grounds in support of its Motion for Summary Judgment: (1) Plaintiff cannot prove disability discrimination because he was unable to perform the essential functions of his job; (2) Plaintiff cannot prove race discrimination because he cannot demonstrate that he was qualified for the position; and (3) Defendant has proffered a legitimate reason for terminating Plaintiff, and Plaintiff has not shown pretext.  The Court will address each of those grounds in turn.

### I.      Disability Discrimination

Under the ADA, "No covered entity shall discriminate against a qualified individual[1] on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a) (emphasis added).  To establish a prima facie case of discrimination under the ADA, a plaintiff must show that: "(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of

---

[1] A "qualified individual" is defined as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8); Hohider v. UPS, 574 F.3d 169, 186 (3d Cir. 2009) (defining a "qualified individual" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.").  To determine the essential functions of the job, courts shall consider "the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job."  42 U.S.C. § 12111(8).

the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination." Williams v. Phila. Hous. Auth. Police Dep't, 380 F.3d 751, 761 (3d Cir. 2004) (quoting Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 306 (3d Cir. 1999)) (emphasis added).  If the plaintiff establishes a prima facie case, the burden shifts to the defendant to rebut the presumption of discrimination by "articulat[ing] some legitimate, nondiscriminatory reason for the employment action." Nicholson v. W. Penn Allegheny Health Sys., 297 F. App'x 157, 159 (3d Cir. 2008) (quoting Wishkin v. Potter, 476 F.3d 180, 184-85 (3d Cir. 2007)).  Where the defendant has rebutted the presumption of discrimination, the burden shifts back to the plaintiff to show that the defendant's proffered reason is pretextual. Id.

Defendant argues that Plaintiff is not a "qualified individual" under the ADA because he is not capable of performing the essential functions of the job with or without reasonable accommodations.  (Def.'s Reply 5.)  First, Defendant asserts that Plaintiff is estopped from claiming disability discrimination because he and his treating physician testified at the worker's compensation hearing that he could not perform the functions of his job.  (Def.'s Reply 7.) Additionally, the worker's compensation judge found that there were no light-duty positions available and the CWA was unable to accommodate his medical restrictions after the conclusion of the 60-day light-duty period.  (Def.'s Reply 7.)  Because this case can be disposed of on other grounds, the Court will not address Defendant's estoppel argument.

Instead, it is sufficiently compelling that the evidence presented does not raise a genuine dispute as to whether Plaintiff meets the definition of a "qualified individual."  Dr. Wolfe certified that Plaintiff has a permanent disability, allowing him only to occasionally bend, crawl, operate

7

heavy equipment, squat, and work at heights; and rendering him incapable of lifting, pushing, or pulling greater than fifty pounds; digging with a shovel; and using heavy tools. (Def.'s Ex. C.) In the judgment of the appropriate CWA personnel, digging with a shovel and using heavy tools are essential functions of a Repairman Specialist. (Def.'s Ex. F.) The CWA also determined that operating valves and fire hydrants are essential functions of the job that involve lifting, pushing, or pulling over 50 pounds. (Def.'s Ex. F.) Finally, the CWA determined that pump and motor maintenance work are functions of a Repairman Specialist that involve bending, crawling, and squatting more than occasionally. (Def.'s Ex. F.)

Also, fellow employees, Matthew Glisson, Lawrence Cowan, and Thomas Price, who either previously worked or currently work as Repairman Specialists, agree that the job requires lifting, pushing, and pulling greater than 50 pounds; bending; squatting; maneuvering to fit into tight positions; digging; and using heavy equipment. (Glisson Dep. 7-23, Aug. 27, 2009, Def.'s Ex. M; Cowan Dep. 7-19, Aug. 27, 2009, Def.'s Ex. N; Price Dep. 6-16, Aug. 27, 2009, Def.'s Ex. O.) They also unanimously agree that the permanent restrictions related to those functions would not allow Plaintiff to perform the essential job functions. (Glisson Dep. 16:8-17:2, Def.'s Ex. M; Cowan Dep. 18:15-19:4, Def.'s Ex. N; Price Dep. 13:1-17, Def.'s Ex. O.)

Plaintiff attempts to counter that evidence with the testimony of Terrance Nacrelli, who testified that lifting heavy equipment is not "a big factor in the job;" pushing or pulling heavy equipment is "not an everyday occurrence;" the job requires the use of a shovel or heavy tools only "on rare occasion;" and he did not do much crawling or squatting, and only some bending. (Nacrelli Dep. 19:17-19, 19:23-20:3, 28:5-10, 30:11-14, July 10, 2009, Pl.'s Ex. A.) However, Mr. Nacrelli worked as a Repairman Specialist for only two to four weeks, during the period that

8

Plaintiff was out because of his injury. (Nacrelli Dep. 9:8-15, Pl.'s Ex. A.) Therefore, he has only limited direct experience with the position, in comparison to Mr. Glisson, Mr. Cowan, and Mr. Price.

Further, Plaintiff's claim that he could have performed the essential functions of the job with the assistance of other employees conflicts with his testimony at the worker's compensation hearing that certain jobs were one-man jobs. (Worker's Comp. Hr'g Tr. 21:16-21, Def.'s Ex. J; Pl.'s Dep. 18:12-16, Def.'s Ex. A.) At least with respect to those one-man jobs, the CWA would be required to redistribute essential job functions to other employees in order to accommodate Plaintiff. Employees are not required to shift responsibilities to other employees in order to comply with the reasonable accommodation requirement.[2] See Lombardo v. Air Prods. & Chems., Inc., No. 05-1120, 2006 U.S. Dist. LEXIS 46077, at *38-39 (E.D. Pa. July 7, 2006) (finding that lifting and reaching are essential functions of the warehouse position occupied by the plaintiff, and that reassigning those tasks to other employees was not required as a reasonable accommodation under the ADA); Lucarelli v. CONRAIL, No. 98-CV-5904, 2002 U.S. Dist. LEXIS 12201, at *29 (E.D. Pa. Mar. 26, 2002) ("Employers are not...required to assign existing employees...to perform the essential functions of an employee's job which he or she cannot perform because of an impairment."). Thus, an accommodation that would shift Plaintiff's burden to other employees or require other employees to work harder is not the type of reasonable accommodation envisioned

---

[2] Although "job restructuring" is included in the ADA's definition of "reasonable accommodation," "the EEOC regulations interpreting the ADA state that reasonable accommodation means '[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position.'" Lombardo v. Air Prods. & Chems., Inc., No. 05-1120, 2006 U.S. Dist. LEXIS 46077, at *38-39 (E.D. Pa. July 7, 2006) (citing 29 C.F.R. § 1630.2(o)(1)(ii)). Accordingly, "[t]he regulations state that 'an employer or other covered entity is not required to reallocate essential functions'" in order to satisfy the reasonable accommodation requirement. Id. (citing 29 C.F.R. Pt. 1630 app. 1630.2(o)).

by the ADA.

Moreover, Plaintiff's claim that he has "overcome any of these temporary problems" (Pl.'s Resp. ¶ 41) seems self-serving because it conflicts with his treating physician's testimony and the testimony upon which he relied during the worker's compensation hearing to support his award of worker's compensation benefits. In addition, it is unclear how transferring Plaintiff to another location (Pl.'s Resp. ¶¶ 19, 27) constitutes a reasonable accommodation, as Plaintiff has provided no evidence in support of that assertion.

Thus, the evidence before the Court does not raise a genuine dispute regarding whether Plaintiff was a qualified individual capable of performing the essential functions of the Repairman Specialist job. Assuming *arguendo* that Plaintiff has presented a prima facie case of disability discrimination, the Court is satisfied that Defendant has proffered a legitimate, nondiscriminatory reason for terminating Plaintiff. Defendant's policy was to offer light duty as a temporary accommodation based on the availability of productive work, and a statement from the employee's doctor that the employee could be returned to full duty at the end of the 60-day period. (Def.'s Ex. B.) Dr. Wolfe never released Plaintiff to full duty, and instead placed permanent restrictions upon Plaintiff. (Def.'s Ex. C.) In addition, Plaintiff advised the CWA that he would not return to work without the restrictions placed upon him by Dr. Wolfe. (Def.'s Ex. G.) Thus, when Plaintiff could not perform the functions of his position after the 60-day light-duty period was extended, Plaintiff was terminated pursuant to company policy.

Plaintiff has provided no evidence that Defendant's legitimate business reason was only a pretext for discrimination. To show pretext, "a plaintiff must submit evidence which (1) casts

doubt upon the legitimate reason proffered by the employer such that a factfinder could reasonably conclude that the reason was a fabrication; or (2) would allow the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the employee's termination." Kimble v. Morgan Props., 241 F. App'x 895, 898 (3d Cir. 2007) (citation omitted); Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994) ("The non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered reasons for its action that a reasonable factfinder could rationally find them unworthy of credence, and hence infer that the employer did not act for [the asserted] non-discriminatory reasons."). Here, Plaintiff has not offered any evidence which either casts doubt upon Defendant's articulated reason or raises an inference that discrimination is more likely than not the motivating factor behind Plaintiff's termination. Accordingly, there is insufficient evidence to raise a genuine dispute that Plaintiff was subjected to disability discrimination.

## II. Race Discrimination

Under Title VII, it is unlawful to discriminate in employment on the basis of race. 42 U.S.C. §§ 2000e-2000e-17. To establish a prima facie case of employment discrimination in cases where the plaintiff lacks direct evidence of discriminatory intent, the plaintiff must prove that: (1) he is a member of a protected class; (2) he applied and was qualified for a job for which the employer was seeking applicants; (3) despite his qualifications, he or she was rejected; and (4) after the plaintiff was rejected, the position remained open and the employer continued to seek applications from persons of the plaintiff's qualifications. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); see also Ahmed v. Lowe's Home Ctrs., Inc., 346 F. App'x 816, 819 n. 2 (3d Cir. 2009) (citation omitted); Lacy v. AMTRAK, 254 F. App'x 934, 936 (3d Cir. 2007).

Similar to ADA claims, once a prima facie case has been established, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the employment action. McDonnell Douglas, 411 U.S. at 802. Once such a showing has been made, the burden shifts back to the plaintiff to establish that the defendant's proffered reason is pretextual. Id. at 804.

Plaintiff has not presented sufficient evidence to raise a genuine issue of material fact with respect to whether he is qualified for the Repairman Specialist job. In a similar case cited by Defendant, Hubbard v. Springfield Bd. of Educ., 80 F. App'x 757, 758-59 (3d Cir. 2003), the Third Circuit affirmed summary judgment in favor of the defendant employer where the plaintiff, a custodian and bus driver, could not show that he was able to perform the duties of a bus driver and also could not show that others outside of the protected class were treated more favorably. Similarly, as articulated above, Plaintiff cannot establish that he was capable of performing the functions of his job after his injury. On the contrary, his own admissions at the worker's compensation hearing and the permanent restrictions placed upon him by his treating physician indicate that Plaintiff's injury rendered him unqualified to perform the duties required of a Repairman Specialist.

In addition, Defendant contends that Plaintiff's argument that other employees were treated more favorably lacks merit. Plaintiff has provided no evidence, other than the findings contained in the EEOC Determination Letter, that would suggest that other employees were treated more favorably. (Pl.'s Ex. B.) Defendant asserts that the employees cited by Plaintiff during the course of discovery were not similarly situated to Plaintiff because they did not have permanent injuries that affected their ability to perform the essential functions of their positions. (Def.'s Reply 12.) Also, Defendant argues that while those other employees may have applied for less strenuous

12

positions after returning to full duty status in their former jobs, there were no light-duty positions which would have accommodated Plaintiff's restrictions and Plaintiff did not apply for any other positions. (Def.'s Reply 12.) Although the Court may consider the EEOC's Determination Letter at summary judgment,[3] the Court need not address whether the EEOC Determination Letter creates a genuine dispute of material fact because the Court is satisfied that Plaintiff has not sufficiently established that he is qualified to perform the duties of his job. Therefore, since Plaintiff has not demonstrated such qualifications, Plaintiff has failed to present a prima facie case of race discrimination.

Even if Plaintiff met all the prongs of the test for a prima facie case, Defendant has articulated a legitimate, nondiscriminatory reason for Plaintiff's termination. Moreover, there is no evidence that Defendant's reason constitutes mere pretext. To defeat a summary judgment motion, Plaintiff is required "to identify 'some evidence, direct or circumstantial, from which a factfinder would reasonably either: (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.'" Flax v. Delaware, 329 F. App'x 360, 364 (3d Cir. 2009) (citations omitted). Plaintiff has failed to do so.

Plaintiff testified that he felt that Dave Krupiak, Chief of Distribution, had a "personal vendetta" against him because he negotiated the issue of having Martin Luther King, Jr. holiday

---

[3] The Court makes no determination regarding the admissibility of the EEOC Determination Letter. In Coleman v. Home Depot, Inc., 306 F.3d 1333, 1345 (3d Cir. 2002), the Third Circuit held that "the decision of whether or not an EEOC Letter of Determination is more probative than prejudicial is within the discretion of the trial court, and to be determined on a case-by-case basis." See also Martinelli v. Penn Millers Ins. Co., 269 F. App'x 226, 229 (3d Cir. 2008); Neal v. Daily's Juice, No. 07-1497, 2009 U.S. Dist. LEXIS 9962, at *5-6 (W.D. Pa. Feb. 10, 2009).

observed by the CWA. (Pl.'s Dep. 120:6-24, Def.'s Ex. A.) He also testified that, after he purchased a Hummer, he heard that Mr. Krupiak told someone, "If he can buy a Hummer he don't need a job here." (Pl.'s Dep. 121:8-9, Def.'s Ex. A.) Defendant contends that Plaintiff's testimony is insufficient to raise a genuine dispute that Defendant's stated reason is mere pretext. The Court agrees. Plaintiff has presented no evidence from which a reasonable juror could conclude that the CWA's articulated reasons are not credible or that Plaintiff's termination was more likely than not motivated by discriminatory animus. On the contrary, Plaintiff has presented only speculation and hearsay.[4] Therefore, Plaintiff has failed to defeat summary judgment on his race discrimination claim.

## CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff has failed to introduce evidence sufficient to create any genuine issue of material fact with respect to his disability and race discrimination claims. Accordingly, the Court will grant Defendant's Motion for Summary Judgment.

An appropriate Order follows.

---

[4] The Court makes no determination regarding the admissibility of the statement allegedly made by Mr. Krupiak.